The H. O. Canfield Co. v. Commissioner.
The H. v. Commissioner
Docket No. 18895.
United States Tax Court
1950 Tax Ct. Memo LEXIS 70; 9 T.C.M. (CCH) 967; T.C.M. (RIA) 50259; October 20, 1950
*70 Vincent E. Cerow, Esq., 522 5th Ave., New York, N. Y., for the petitioner. Paul P. Lipton, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This proceeding involves determinations of deficiencies in tax for 1941, as follows: Income
$287.34
Declared Value Excess Profits
228.48
Excess Profits
575.55
Petitioner claims overpayments of $2,661.44 income tax and $27,364.49 excess profits tax for the year in question. The only litigated issue relates to petitioner's right to a deduction from income in 1941 by reason of a 1940 net operating loss carry-over on the closing out of a debit balance in the personal account of petitioner's deceased president, and the amount thereof. Findings of Fact Some of the facts have been stipulated. We incorporate the stipulation herein by reference. Petitioner is a Connecticut corporation, organized in June 1904, with its principal place of business in Bridgeport, Connecticut. Its income and excess profits tax returns for 1941 were filed with the collector of internal revenue for the district of Connecticut. At all times material to these proceedings petitioner was engaged in the manufacture *71 of mechanical rubber products. Albert H. Canfield was petitioner's president from some time prior to 1913 until August 3, 1939, the date of his death. Anna F. Canfield was his wife and Jean Canfield was his daughter. Anna qualified and served as the executrix of Canfield's estate. Petitioner's authorized and issued capital stock consisted of 3,000 shares of $100 par value common stock. Prior to January 8, 1936, not more than some 200 shares were owned by persons outside of the Canfield family. Canfield's mother owned approximately 2,700 shares of the stock prior to her death in the early thirties. Canfield and his wife owned small varying amounts until the death of his mother, at which time he inherited her entire block of stock. Canfield spent money freely in Bridgeport and New York City on pleasure and lavish gifts. Until 1936, all of his personal bills were paid by petitioner and Canfield also drew from petitioner whatever money he wanted. The other officers of the company were aware of his improvident spending. Beginning July 1, 1904, petitioner maintained an account entitled "A. H. Canfield" on its books, to which all of the above-described withdrawals were charged, except *72 for certain amounts which were at times debited to an account entitled "A. H. Canfield - Special." A similar account was maintained for Canfield's mother during her life, and she also withdrew money from petitioner as she saw fit. The "A. H. Canfield" account showed a debit balance at all times subsequent to July 1, 1904. During all the years the account was in existence, salary, dividends and other items due to Canfield were credited to the account. The debit balance of $96,489.36, disclosed by the account as of December 31, 1915, was not carried forward into 1916. For 1916 $36,822.18 was debited and $24,825 was credited to this account, leaving a debit balance of $11,997.18 as of January 1, 1917. The debit balance as of January 1, 1920, was $31,144.62. Total debits and credits to the account for the years 1920 through 1933, and the balance at the end of each year, were as follows: Bal. at
Total
Total
End of
Year
Debits
Credits
Year
1920
$81,368.80
$19,800.00
$ 92,713.42
1921
67,012.83
58,472.46
101,253.79
1922
37,790.47
27,670.42
111,373.84
1923
46,587.29
* 46,587.29
111,373.84
1924
50,378.55
** 50,378.55
111,373.84
1925
54,182.81
32,865.00
132,691.65
1926
55,662.26
31,320.00
157,033.91
1927
47,508.73
31,135.07
173,407.57
1928
60,446.15
31,075.79
202,777.93
1929
71,627.68
47,600.00
226,805.61
1930
59,520 $39
45,715.00
240,611.00
1931
38,172.56
46,313.80
232,469.76
1932
21,779.35
22,853.00
231,396.11
1933
17,550.08
22,600.00
226,346.19
*73 At the annual meeting of petitioner's stockholders held February 10, 1925, the following resolution was adopted: "Resolved: That, as a bonus, the Treasurer is hereby authorized and empowered to transfer from the Surplus Account and place to the credit of A. H. Canfield the sum of seven thousand seven hundred fifty seven dollars and ninety eight cents ($7,757.98) being his apparent indebtedness to the Corporation, as standing on the books December 31, 1924." The following resolution was adopted at the annual stockholders' meeting held February 9, 1926: "Resolved: That the sum of twelve thousand dollars now carried on the books of The H. O. Canfield Company, as Bills Receivable, from A. H. Canfield, be credited to his account as a bonus for the year 1925." The credit resulting from this resolution is not reflected in the "A. H. Canfield" account. Credits to the "A. H. Canfield" account during the calendar years *74 1920 to 1933, inclusive, in respect of Canfield's salary were as follows: Year
Amount
1920
$30,000.00
1921
30,000.00
1922
21,250.08
1923
44,522.18
1924
37,757.98
1925
42,000.00
1926
30,000.00
1927
$30,000.00
1928
30,000.00
1929
45,000.00
1930
45,000.00
1931
45,000.00
1932
22,850.00
1933
20,000.00
Canfield's salary during the years 1914 to 1919, inclusive, ranged between $16,000 and $30,000, and during the years 1920 to 1933, inclusive, ranged between $20,000 and $45,000. Canfield was versatile and an excellent salesman. Canfield's salary from petitioner from 1934 until the date of his death on August 3, 1939, was as follows: Year
Amount
1934
$13,334.00
1935
13,000.00
1936
17,382.80
1937
20,059.70
1938
17,600.00
1939 (To Aug. 3)
9,300.00
The "A. H. Canfield - Special" account was established on the books of the company as of November 19, 1924. The last debit to that account was made on July 16, 1928, as of which date the balance in the account was $42,296.48. This balance was transferred to the "A. H. Canfield" account as of December 31, 1934. As of the same date, with Canfield's knowledge and agreement, *75 the account was also debited with $2,752.31 from the account in the name of the Estate of Mrs. H. O. Canfield, and with $6,600.00 from the Mrs. H. O. Canfield special account. The balance in the "A. H. Canfield" account, after the debits of December 31, 1934, was $276,403.29. As of that date, the account was credited with $276,402.29, leaving a debit balance in the account of $1.00. As of the same date, a "Reserve Account" was established on the books of the company with a debit of $276,402.29. Credit organizations had objected to the manner in which the account had been reflected on petitioner's books. Prior to 1935, the balance in the "A. H. Canfield" account, as well as the balances in similar accounts, was shown in petitioner's operating statements and in balance sheets attached to income tax returns in "accounts receivable" rather than in a loan account. As of the end of the calendar year 1934, the balance sheet attached to petitioner's income tax return for that year showed total assets of $671,198.93, which included "accounts receivable" in the amount of $336,599.80. H. J. Donnelly was connected with petitioner for many years. He commenced work as Canfield's stenographer *76 and gradually worked himself up through the accounting, sales, and manufacturing departments. He served as secretary of the company and became president after Canfield's death. Canfield had a great deal of family trouble in the early thirties which caused him to have a nervous collapse. He became inactive in the company at that time and from that time on Donnelly was in charge of petitioner's affairs. Because Canfield was not well, Donnelly advised him that it would be in the interest of the company if he would turn back some of his stock to the company so that it could be purchased by other employees. Canfield turned in 1,070 shares to petitioner, and these shares were sold to members of his family and other officers of the company at $30 per share on January 8, 1935. The "Reserve Account" was credited with $107,000, leaving a balance in the account of $169,402.29 as of December 30, 1935, with the notation "1070 shares capital stock." This balance was transferred to the "A. H. Canfield" account as of the same date. The balance in the latter account as of December 31, 1935, was $173,414.72, consisting of the opening balance of $1,000, debits during year of $8,379.96, less credits *77 of $4,367.53, plus the year end debit of $169,402.29. The journal entry on petitioner's books in respect of the transaction involving the 1,070 shares of stock turned in by Canfield disclosed a credit to "Treasury Stock" in the amount of $107,000 and a charge to surplus of $74,900, representing the difference between the value of the stock taken in at par and resold at $30 per share. The analysis of surplus on petitioner's income tax return for the calendar year 1935 showed a debit to surplus in the amount of $74,900 with the explanation "Loss on Treas. Stock." The balance sheet attached to petitioner's return for that year showed an asset desscribed as "A. H. Canfield - Personal" in the amount of $276,403.29 at the beginning of the year and in the amount of $173,914.72 as of the end of the year. Late in 1935, an attorney practicing in Bridgeport asked Donnelly to see him. The attorney wanted to know why the Canfield family was able to maintain its high standard of living, whereas the rest of the stockholders in the company had not received any dividends. Donnelly told the attorney that no dividends were being paid and that Canfield was drawing out of the company whatever funds *78 he required. The attorney chastised Donnelly severaly and told him that as a director of petitioner he would be responsible for the "indebtedness" of Canfield to petitioner. Donnelly was upset and concerned about the possibility of losing his small home and asked the attorney what he would suggest. The attorney suggested that Canfield be requested to sign a note with his stock in the company as collateral. The following is an excerpt from the minutes of the meeting of petitioner's board of directors held January 4, 1936: "Mr. Donnelly stated that he had a talk with Mr. J. S. Pullman, Counsel for the Company, relative to the indebtedness of Mr. Canfield to the Company and Mr. Pullman stated that the Directors and Officers, in case of its insolvency, would be held personally responsible unless they secured payment of the indebtedness as a pledge of Mr. Canfield's stock to the Company as collateral for the indebtedness. "Motion made by H. A. Mayse and seconded by Mr. M. B. Waldo that H. J. Donnelly secure from Mr. Pullman a form of note evidencing Mr. A. H. Canfield's debt to the Company and that he negotiate with Mr. Canfield toward securing an assignment of his stock as collateral. *79 " The following excerpt is taken from the minutes of a special meeting of petitioner's board of directors held January 7, 1936: "H. J. Donnelley presented to the meeting a note dated January 7, 1936 signed by A. H. Canfield promising to pay to the Company on demand $164,289.53 and stated that Mr. Caefield had agreed to pledge 1110 shares of his capital stock in the Company for the payment of the note. "On motion made by H. A. Mayse and seconded by M. B. Waldo it was voted that the company accept such note and pledged stock." Canfield was not present at either of the above meetings. The note given by Canfield had no provision for interest. At the time of the above transaction, Donnelly believed that Canfield owned only 1110 shares of petitioner's capital stock whereas he, in fact, owned 1192 shares. The note given by Canfield to petitioner was never entered on its books as a "note receivable." The balance sheet attached to petitioner's income tax return for the calendar year 1936 showed "Loans to Officers" as of the beginning of the year as $1, and as $166,838.72 at the end of the year. The analysis of surplus showed a credit to surplus of $173,913.72 with the explanation *80 "Res. for Loans to Officers returned to Surplus." Total debits and credits to the "A. H. Canfield" account for each of the calendar years 1936 to 1939, inclusive, and the balance in the account as of the end of each of said years, was as follows: Debit
Total
Total
Bal. at
Year
Debits
Credits
End of Yr.
1936
$7,798.00
$22,102.00
$159,110.72
1937
7,295.57
16,256.12
150,150.17
1938
3,144.51
2,297.64
150,997.04
1939
5,146.78
11,026.00
145,117.82
The minutes of a meeting of petitioner's board of directors held February 6, 1940, recite that Donnelly, who was then president, read to the meeting a "memorandum showing the amount of indebtedness to the company on the part of Mr. A. H. Canfield at the time of his death was $145,117.82." It was voted that: "* * * The Company's claim against the estate of A. H. Canfield be liquidated and discharged by the Executrix of the estate transferring 1110 shares of stock of the company held as collateral, to the H. O. Canfield Co., and that upon such transfer the company waive all further claim against the estate for the deficiency owing to the value of the stock not being equal to the amount of *81 the debt." The minutes recite that the following memorandum of the transaction, signed by petitioner's president and the executrix of the Estate of A. H. Canfield, was read at the meeting: "It is agreed by the parties hereto that the claim of the H. O. Canfield Co. against the Estate of A. H. Canfield, deceased, shall be liquidated and discharged by the Company taking over the 1110 shares of its stock pledged as collateral." The balance in the "A. H. Canfield" account was closed out on August 1, 1940, by a credit in the amount of $145,117.82. The journal entry in respect of this transaction showed a debit to "Treasury Stock" in the amount of $145,117.82. The following legend appeared below the journal entry: "To record the purchase of 1110 shares of common stock of the H. O. Canfield Company from the Estate of A. H. Canfield in final settlement of the personal account of A. H. Canfield as per minutes of the Board of Directors' meeting of February 6, 1940, and purchase agreement dated and signed January 29, 1940." The analysis of surplus on petitioner's income tax return for the calendar year 1940 showed a debit to surplus in the amount of $34,117.82, with the explanation: *82 "Prom. on Treas. Stock." Capital stock was shown in its balance sheet as of the end of 1940 as $168,500. The inventory of Canfield's estate disclosed personal property valued at $121,654.22, including 1192 shares of petitioner's stock valued at $100 per share. Debts of the estate (other than petitioner's alleged claim) and administration expenses totaled $4,163.19. The excutrix received $6,060 on the sale of 60 shares of petitioner's common stock and dividends on the stock of $328. She petitioned on April 26, 1940, for an order of distribution of 22 shares of petitioner's stock, a cash balance of $2,467.03, and other personal property valued at $2,240. Her petitions contained the following accounting: DR.
To amount of personal property as
an Inventory
$121,654.22
To error in appraisal of jewelry
28.00
To gain on sale of 60 shares of stock
of H. O. Canfield Co.
60.00
To dividends on stock of H. O. Can-
field Co.
328.00
$122,070.22
CR.
By ante mortem claims paid
1,486.27
By transfer of 1110 shares of stock
of H. O. Canfield Co. held as col-
lateral for debt of $145,117.82, in-
ventoried at (See note)
111,000.00
By funeral expenses
908.50
By appraisers' fees: William P. Clrk $50
Lauren Arnold 50
$100.00
By probate fees
45.00
By Pullman & Comley, attorneys'
fees
550.00
By miscellaneous expenses
15.39
By household furniture, jewelry and
automobiles turned over to legatee
2,240.00
By securities on hand - 22 shares of
stock of H. O. Canfield Co.
2,200.00
By Albert H. Canfield - personal in-
come tax for 1939
503.63
By one-half of Estate 1939 income
tax paid
277.20
By reserve for balance of Estate 1939
income tax
277.20
By cash on hand to balance -
2,467.03
$122,070.22
*83 Note: 1110 shares of stock of the H. O. Canfield Co. was pledged January 7, 1936, as security for a debt to the H. O. Canfield Co. of $164,289.53, which debt had been reduced to the amount of $145,117.82 by payments and the application of dividends up to February 6, 1940. On February 6, 1940, the H. O. Canfield Co. agreed with the Executrix to accept said 1110 shares of stock in full discharge of the debt of $145,117.82 and the Executrix transferred the same to the Company. Petitioner did not attempt to recover the additional 82 shares of stock which were owned by the Estate of A. H. Canfield. Donnelly had known Canfield since boy-hood. He was very attached to Canfield and to Canfield's widow. Canfield was held in similar warm regard by other officers of the company. Donnelly thought it might reflect on the company if steps were taken to make a recovery against the estate other than the shares posted as collateral. No effort was made to obtain from his estate the other 82 shares of stock and other personal property. Petitioner's business improved in 1939 primarily due to the fact that it went into aircraft work in that year. Prospects for the company's future were much better. *84 The balance sheet attached to petitioner's income tax return for the calendar year 1939 disclosed the following assets and liabilities as of the end of the year: ASSETS
Cash
$ 47,356.19
Notes and accounts receivable
$ 91,938.66
Less reserve for bad debts
2,287.55
89,651.11
Inventories: (a) Raw materials
$ 17,910.65
(b) Work in process
9,296.36
(c) Finished goods
8,618.63
35,825.64
ASSETS - continued
Investments: Obligations of the United States
12,749.17
Other Investments: All other investments or loans
691.95
Capital assets: (a) Buildings
$115,276.87
(b) Machinery and equipment
209,266.12
(c) Furniture and fixtures
8,920.63
(d) Delivery equipment
4,739.80
Moulds
97,417.85
Roadway improvements
763.00
Total
$436,384.27
Less reserves for depreciation (except on
land)
234,233.65
202,150.62
Land
21,400.00
Other assets: (a) Deferred charges
$ 2,716.20
(b) Loans to Officers
145,138.55
147,854.75
TOTAL ASSETS
$557,679.43
LIABILITIES AND CAPITAL
Accounts payable
$ 30,600.22
Accrued expenses: Taxes
$ 19,391.30
Other
6,645.76
26,037.06.
Capital stock: Common stock
279,500.00
Earned surplus and undivided profits
221,542.15
TOTAL LIABILITIES AND CAPITAL
$557,679.43
*85 Petitioner's net income, before taxes, for the calendar years 1913 to 1942, inclusive, was as follows: Year
Amount
Year
Amount
1913
$ 67,296.87
1928
$ 90,467.64
1914
63,744.80
1929
80,873.51
1915
78,133.10
1930
9,034.90
1916
34,994.42
1931
( 16,794.15)
1917
23,397.01
1932
( 50,541.17)
1918
27,988.14
1933
( 17,066.64)
1919
67,306.30
1934
( 4,493.06)
1920
134,764.07
1935
12,950.97
1921
( 5,599.26)
1936
58,964.40
1922
120,595.57
1937
29,553.64
1923
89,936.14
1938
961.06
1924
61,384.31
1939
57,441.08
1925
122,681.00
1940
36,152.98
1926
73,250.00
1941
152,401.90
1927
53,124.72
1942
253,200.06
Net earnings per share of petitioner's capital stock for the calendar years 1936 to 1942, inclusive, after provisions for taxes, and dividends paid, were as follows: Year
Net Earnings
Dividends
1936
$15.71
$12.00
1937
8.08
8.50
1938
( 0.26)
None
1939
14.79
9.25
1940
8.71
10.00
1941
23.04
11.00
1942
20.27
20.25
1943
13.28
12.00
1944
5.43
6.00
1945
( 32.86)
9.00
1946
( 9.24)
None
1947
( 22.34)
None
Sales of petitioner's stock were as follows: No. of
Date
Shares
From
To
Jan. 8, 1935
200
The H. O. Canfield Company
Anna Canfield
Jan. 8, 1935
200
The H. O. Canfield Company
Jean Canfield
Jan. 8, 1935
280
The H. O. Canfield Company
H. J. Donnelly
Jan. 8, 1935
130
The H. O. Canfield Company
M. B. Waldo
Jan. 8, 1935
130
The H. O. Canfield Company
D. M. Wade
Jan. 8, 1935
130
The H. O. Canfield Company
H. A. Mayse
July 15, 1939
200
Jean Corbin
The H. O. Canfield Company
July 21, 1939
5
Nellie V. Tomlinson
The H. O. Canfield Company
Feb. 6, 1940
2
Estate of A. H. Canfield
Mary Pullman
Feb. 6, 1940
2
Estate of A. H. Canfield
Elizabeth Pullman Dominick
Feb. 6, 1940
2
Estate of A. H. Canfield
Alice Pullman Longstreth
Feb. 12, 1940
20
Estate of A. H. Canfield
Mary Mayse
Feb. 16, 1940
10
Estate of A. H. Canfield
D. H. Wade
Feb. 17, 1940
2
Estate of A. H. Canfield
John S. Wade
Feb. 21, 1940
3
Estate of A. H. Canfield
H. M. Dowdney
Mar. 8, 1940
11
Estate of A. H. Canfield
M. B. Waldo
Mar. 9, 1940
8
Estate of A. H. Canfield
Edward H. Clohessy
Feb. 15, 1943
2
The H. O. Canfield Company
C. L. Dudley
July 2, 1943
10
The H. O. Canfield Company
Gert Locke
July 2, 1943
10
The H. O. Canfield Company
D. M. Wade
July 2, 1943
3
The H. O. Canfield Company
C. L. Dudley
July 2, 1943
5
Gert Locke
The H. O. Canfield Company
Oct. 16, 1943
10
Elizabeth Dominick
The H. O. Canfield Company
Nov. 14, 1943
12
The H. O. Canfield Company
M. B. Waldo
Dec. 30, 1943
10
The H. O. Canfield Company
C. L. Dudley
June 19, 1944
6
Hincks Bros. & Co.
The H. O. Canfield Company
Aug. 22, 1945
1,274
The H. O. Canfield Company
The Pantasote Industries
April 4, 1946
226
Anna F. Canfield
The Pantasote Industries
April 9, 1946
15
Edward H. Clohessy
The Pantasote Industries
April 22, 1947
387
H. J. Donnelly
The Pantasote Industries
April 24, 1947
100
Anna F. Canfield
The Pantasote Industries
*86 Price
Date
Per Share
Total
Jan. 8, 1935
$ 30.00
$ 6,000.00
Jan. 8, 1935
30.00
6,000.00
Jan. 8, 1935
30.00
8,400.00
Jan. 8, 1935
30.00
3,900.00
Jan. 8, 1935
30.00
3,900.00
Jan. 8, 1935
30.00
3,900.00
July 15, 1939
38.75
7,750.00
July 21, 1939
100.00
500.00
Feb. 6, 1940
Feb. 6, 1940
Feb. 6, 1940
Feb. 12, 1940
Feb. 16, 1940
101.00
6,060.00
Feb. 17, 1940
Feb. 21, 1940
Mar. 8, 1940
Mar. 9, 1940
Feb. 15, 1943
100.00
200.00
July 2, 1943
100.00
1,000.00
July 2, 1943
100.00
1,000.00
July 2, 1943
100.00
300.00
July 2, 1943
100.00
500.00
Oct. 16, 1943
100.00
1,000.00
Nov. 14, 1943
100.00
1,200.00
Dec. 30, 1943
100.00
1,000.00
June 19, 1944
100.00
600.00
Aug. 22, 1945
70.00
89,180.00
April 4, 1946
100.00
22,600.00
April 9, 1946
75.00
1,125.00
April 22, 1947
75.00
29,025.00
April 24, 1947
75.00
7,500.00
Petitioner filed a corporation income tax return for the calendar year 1940 on March 15, 1941, disclosing net income of $35,817.38, and a tax liability of $8,241.61. No deduction was claimed in this return on account of the transaction resulting from action taken in respect of "the claim against *87 the estate of A. H. Canfield" at the directors' meeting held February 6, 1940. Petitioner's income tax return for the calendar year 1940 was investigated, and a deficiency in income tax in the amount of $123.84 was proposed. Petitioner agreed to the assessment and collection of this deficiency by a waiver signed October 23, 1942. Net income, as finally determined for the calendar year 1940, was $36,152.98. Petitioner filed an excess profits tax return for the calendar year 1940, disclosing no tax liability. Petitioner filed corporation income and excess profits tax returns for the calendar year 1941 on March 16, 1942. Petitioner did not claim any net operating loss deduction and did not claim any excess profits credit carry-over in these tax returns. Petitioner filed timely claims for refund of income and excess profits taxes for the calendar year 1941 in the respective amounts of $2,661.44 and $27,363.49 on October 28, 1946, based upon alleged net operating loss and unused excess profits credit carry-overs from the calendar year 1940 arising out of a loss allegedly sustained on the "compromise" on the Canfield account. The fair market value of the 1110 shares of petitioner's *88 capital stock acquired from the Estate of A. H. Canfield on or about February 6, 1940, was $122,100, or $110 per share, at the date of its acquisition by petitioner. Opinion KERN, Judge: The debt of Canfield to petitioner, if any, was in the amount due upon his note, or the sum of $145,117.82. In addition to the amount represented by Canfield's note, petitioner would have us recompute the balance in Canfield's account by including therein some $96,880 not carried forward from 1915 to 1916, and a difference between the $100 per share credited Canfield on 1070 shares of stock turned in to petitioner and the $30 per share at which it was sold to petitioner's officers and other members of his family. On the present record, we are not disposed to treat the items any differently from the way in which the parties themselves regarded them, and do not recognize any adjustments on account of them. The crucial question thereupon arises as to the fair market value on February 6, 1940, of the stock accepted by petitioner in liquidation of what petitioner claims to be a debt owed to it by Canfield. Upon a careful consideration of the entire record, we have concluded, and found as a fact, *89 that the fair market value of the 1110 shares of stock which petitioner received on February 6, 1940, was $110 per share, or an aggregate of $122,100. Among the facts drawing us to this conclusion are the prices at which the stock was sold at or about the time in question, the book value of the stock, the company's earnings and potential earnings, by reason of the onset of the war economy (in which petitioner was participating), together with the fact that the block of stock involved represented, for practical purposes, a controlling interest in the company. Such a conclusion would leave a balance of $23,017.82 upon the alleged debt. Since petitioner's income in 1940 computed without reference to this "debt" was approximately $36,000, it is apparent that petitioner did not have a net operating loss in 1940. Decision will be entered under Rule 50. Footnotes
*. Credits include an unexplained "balancing" item as of December 31, 1923, in the amount of $14,522.18. ↩
**. Credits include a "balancing" item of $7,757.98 as of December 31, 1924, which is explained by the resolution of February 10, 1925, set forth below.↩